IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| DICK ANDERSON CONSTRUCTION, a Montana Corporation, | CV 10-35-BU-RFC-CSO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | |
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, | |
| Defendant. | |

Plaintiff Dick Anderson Construction ("Anderson") initiated this declaratory judgment action in Montana state court against National Fire Insurance Company of Hartford ("National").  Anderson seeks declarations that: (1) its commercial general liability ("CGL") insurance policy issued by National provides coverage in an underlying negligence action against it; and (2) National has a duty to defend and to indemnify it in that action.  *Complaint (Court Doc. 5) at ¶¶ 1-4, 7-8.*

National removed this case to federal court invoking the Court's diversity jurisdiction.  *Notice of Removal (Court Doc. 2) at ¶ 4.*  Now

pending are the parties' cross-motions for summary judgment.

*National's Mtn. (Court Doc. 21) and Anderson's Cross-Mtn. (Court Doc. 26).* Having reviewed the record and the parties' arguments, the Court issues the findings and recommendations that follow.

## I.   <u>BACKGROUND</u>

In October 2008, Stuart Christopher and Donna Smith ("the underlying plaintiffs") sued Anderson and others in Montana state court ("the underlying action"). *Court Doc. 5 at ¶ 4; Court Doc. 5-4 (Complaint in the underlying action); National's Answer (Court Doc. 6) at ¶ 4.* The lawsuit stemmed from work performed on a sewer lift station installed approximately 82 feet from the underlying plaintiffs' water well. *Court Doc. 5-4 at ¶¶ 3, 5, 13, 19-21.* The underlying plaintiffs allege, *inter alia*, that Anderson's "negligence caused raw sewage to contaminate [the underlying plaintiffs'] water well." *Scheduling Order (Court Doc. 17 at ¶ 3(d) (Stipulations)).*

At the time of its alleged negligence, Anderson was covered by a CGL insurance policy issued by National. *Court Doc. 5 at ¶ 3; Court Doc. 6 at ¶ 3.* Anderson tendered defense of the underlying action to

National.  *Court Doc. 5 at ¶ 5; Court Doc. 6 at ¶ 5; Court Doc. 17 at ¶ 3(e)*.  National denied coverage and a duty to defend, relying on the policy's: (1) pollution exclusion; and (2) pollution incident/waste facility exclusion.  *National's Stmt. of Undisputed Facts (Court Doc. 23) at ¶ 14*.

Later, Anderson again sought coverage under the policy arguing that the policy exclusions were ambiguous and that raw sewage was not a "pollutant" within the policy's meaning.  *Id. at ¶ 15*.  National again denied coverage and also denied that it had a duty to defend.  *Anderson's Stmt. of Undisputed Facts (Court Doc. 28) at ¶¶ 7-9; Court Doc. 23 at ¶ 16*.

On May 19, 2010, Anderson filed this action in state court.  *Court Doc. 5 at 1*.  Anderson claims that National "wrongfully denied coverage and wrongfully denied it had a duty to defend" it in the underlying action.  *Id. at ¶ 6*.  Anderson seeks declarations that: (1) its CGL policy with National covers the injuries and damages alleged in the underlying action; and (2) National has a duty to defend Anderson in the underlying action.  *Id. at ¶¶ 7-8*.

On July 12, 2010, National removed the case to this Court.  *Court*

*Doc. 2.*  National maintains that it has neither a duty to defend nor a duty to indemnify Anderson.  *Court Doc. 6 at 3.*  It also maintains that the policy's pollution exclusion or similar provision applies so that there is no coverage for the underlying action.  *Id. at 2-3.*

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.   *Id*.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986). Where the opposing party will have the burden of proof at trial, the moving party need only point out that there is an absence of evidence to support the nonmoving

party's case.  *Id.*

When parties submit cross-motions for summary judgment, as here, the Court must consider each motion on its own merits.  *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  The fact that both parties have moved for summary judgment does not vitiate the Court's responsibility to determine whether disputed issues of material fact are present.  *Id.*

III.  **DISCUSSION**

    A.  **The CGL Policy's Operative Language**

The parties agree that interpretation and application of the CGL policy's language discussed below governs in this case.

The CGL policy contains a pollution exclusion but that exclusion, was deleted and replaced by an "Amendatory Endorsement – Pollution Exclusion."  *Court Doc. 23 at ¶ 19; Court Doc. 28 at ¶ 10.*  The exclusion was further amended to delete certain paragraphs and replace others. *Court Doc. 23 at ¶ 20.*  Ultimately, the policy's pollution exclusion provides:

This insurance does not apply to:

(1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a)   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  However, this subparagraph does not apply to:

        (i)   "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

        (ii)   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

    (b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations.

(2)   Any loss, cost or expense arising out of any:

     (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

     (b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

Paragraph (2) does not apply to liability for damages because of "property damage" that is not excluded by Paragraph (1) above. However, this exception to Paragraph (2) does not apply to any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement or claim or "suit" solely by or on behalf of a governmental authority.

*Court Doc. 2-1 at 38-39.*[1]

The policy also contains a "Limited Pollution Coverage – Work Sites" endorsement. *Id. at 40-43.* It provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' which directly results from a covered 'pollution incident' to which this insurance applies." *Id. at 40.* For coverage to apply, the "pollution incident" must occur "on or from a

---

[1]Unless otherwise noted, all page numbers cited herein refer to page numbers in the Court's electronic filing system.

'work site[.]'"  *Id.*  This endorsement, however, also contains an exclusion that precludes coverage for "'[b]odily injury' or 'property damage' arising out of a 'pollution incident' at or from a 'work site' which is a 'waste facility.'" *Id. at 41.*

The CGL policy also provides the following definitions:

"Pollution incident" means the emission, discharge, release, or escape of "pollutants," provided that such emission, discharge, release, or escape results in the injurious presence of "pollutants" in or upon land, the atmosphere, interior of a building or any water course, body of water or ground water.  A series of related emissions, discharges, releases or escapes of "pollutants" will be deemed to be one "pollution incident."

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

"Waste facility" means any site to which waste is delivered for storage, disposal, processing or treatment, whether or not such site is licensed by a governmental authority to perform such storage, disposal, processing or treatment.

"Work site" means any site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, including sites temporarily borrowed or rented in support of a single worksite for storage of construction equipment.  "Work site" does not include any premises, site or location which is or was at any time owned or occupied by or rented or loaned to any insured, except for the purpose of performing construction operations.

*Id. at 43.*

**B**.   **The Parties' Arguments**[2]

    1.   **National's Arguments**

First, National argues that the CGL policy's "pollution exclusion ... unambiguously precludes coverage for the damages alleged in the underlying action." *Nat'l's Opening Br. (Court Doc. 22) at 4.*  National argues that several of the policy's pollution exclusion's subsections apply to Anderson's operations that gave rise to the underlying action. *Id. at 5-8.*

Second, National argues that the policy's waste facility exclusion precludes coverage under this case's circumstances. *Id. at 8.*  National acknowledges that the policy contains an endorsement for "Limited Pollution Coverage – Work Sites," which provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' which directly results from a covered 'pollution incident.'" *Id.*  For this coverage to apply, National notes, the "pollution incident" must occur "on or from a 'work

---

    [2]The Court summarizes the parties' arguments in the order in which the parties raised them.

site.'"  *Id. at 8-9.*  For coverage to apply, however, the "work site" cannot be a "waste facility."  *Id. at 9.*  Here, National argues, the "work site" at issue is such a "waste facility," and coverage, therefore, is excluded.  *Id. at 9-11*.

### 2.  <u>Anderson's Arguments</u>

Anderson advances three principal arguments in support of its summary judgment motion and in opposition to National's motion. First, Anderson argues that the work site at issue is a sewage lift station – not a "waste facility" as contemplated in the policy. *Anderson's Opening Br. (Court Doc. 27) at 4-5.*  Thus, Anderson argues, the policy's "Limited Pollution Coverage – Work Sites" endorsement applies and provides coverage.  *Id. at 5-6.*  Also, Anderson argues, "[a]t the very least, the term 'waste facility' and its definition in the Policy are ambiguous[]" which, under Montana law, requires them to be construed in favor of the insured and providing coverage.  *Id. at 7.*

Second, Anderson argues that, if the Court determines that the lift station qualifies as a "waste facility" for which there is no coverage under the policy's terms, the "Limited Pollution Coverage – Work Sites"

endorsement is illusory.  *Id. at 7-8.*  Anderson argues that although the policy contains a "broad pollution exclusion," because of the nature of its business, it "pays a premium to receive coverage for 'pollution incidents' occurring on a 'work site.'" *Id. at 8.*  Anderson argues that National's attempt to preclude coverage for this incident by calling the work site at issue a "waste facility" renders the endorsement "meaningless." *Id.*

Third, Anderson argues that the policy's pollution exclusion is inapplicable in this case.  *Id. at 9-10.*  It argues that the terms "pollutant" and "waste" are ambiguous as used in the policy, rendering the pollution exclusion inapplicable.  *Id. at 4, 10-12.*

### C.   <u>Applicable Law</u>

Under Montana law,[3] insurance contract interpretation presents questions of law for the Court to decide.  *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008).  Montana law provides that courts are to "examine insurance contracts as a whole, with no

---

[3]Because jurisdiction is based on diversity of citizenship, this Court must follow the substantive law of Montana.  *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

special deference to specific clauses." *Id.*  A policy's language "governs if it is clear and explicit." *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont. 2000).

Courts are to "accord the usual meaning to the terms and the words in an insurance contract, and ... construe them using common sense.  An insurance contract is ambiguous if it is 'reasonably subject to two different interpretations.'" *Modroo*, 191 P.3d at 395 (citing *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, ¶ 26 (Mont. 2003)).

Courts attempt to "determine whether [a] term is ambiguous by viewing the policy from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business." *Montana Petroleum Tank Release Compensation Board v. Crumleys, Inc.*, 174 P.3d 948, 957 (Mont. 2008) (hereafter "*Crumleys*") (citation and internal quotations omitted).  An "[a]mbiguity does not exist just because a claimant says so or just because the parties disagree as to the meaning of the contract provision." *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont. 2009) (citations and internal quotations omitted). Courts are not to "distort contractual language to create an ambiguity

-12-

where none exists." *Id*. (citations omitted).

Although Montana courts are to strictly construe doubts in coverage against the insurer, courts are not to rewrite policy terms, but rather to enforce the terms as written. *Generali-U.S. Branch v. Alexander*, 87 P.3d 1000, 1004 (Mont. 2004). Accordingly, "[c]ourts should not ... seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Crumleys*, 174 P.3d at 957 (quoting *Mecca v. Farmers Insurance Exchange*, 122 P.3d 1190, ¶ 9 (Mont. 2005)).

The insured has the initial burden to establish that a claim falls within the basic scope of coverage. The burden of proof then shifts to the insurer to establish that the claim specifically is excluded from coverage. *Travelers Casualty and Surety Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 476 (Mont. 2005).

### D. <u>Analysis</u>

Because it determines the issue to be dispositive, the Court turns first to the coverage provided by the policy endorsement titled "Limited

Pollution Coverage – Work Sites." This endorsement specifically provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' which directly results from a covered 'pollution incident' to which this insurance applies." *Court Doc. 2-1 at 40*.[4] For coverage to apply, the "pollution incident" must occur "on or from a 'work site[.]'" *Id*. This endorsement, however, contains numerous exclusions. The exclusion at issue here precludes coverage for injury or damage "arising out of a 'pollution incident' at or from a 'work site' which is a 'waste facility.'" *Id. at 41*.

As set forth above, Anderson has the initial burden to demonstrate that his claim falls with the basic scope of the endorsement's coverage. It has carried that burden because there is no dispute that the underlying action resulted from a "pollution incident" that occurred "on or from a 'work site'" as contemplated by the policy. *Court Doc. 22 at 9*. The burden of proof shifts to National, therefore, to

---

[4]This endorsement also provides that the insurer has "the right and duty to defend any 'suit' seeking [covered] damages." *Court Doc. 2-1 at 40*.

demonstrate that an exclusion applies.  The precise question before the
Court, then, is whether the sewer lift station "work site" is a "waste
facility" that triggers the "waste facility" exclusion from the Limited
Pollution Coverage.

As noted above, "waste facility" is defined in the CGL policy as
follows:

> "Waste facility" means any site to which waste is delivered for
> storage, disposal, processing or treatment, whether or not such
> site is licensed by a governmental authority to perform such
> storage, disposal, processing or treatment.

*Court Doc. 2-1 at 43.*

Giving the terms and words in this definition their "usual
meaning" and "constru[ing] them using common sense," *Modroo*, 191
P.3d at 395, the Court concludes, for the reasons that follow, that
National has not borne its burden of proving that the sewage lift
station at issue here is a "waste facility."  Thus, in this Court's opinion,
the "Limited Pollution Coverage – Work Sites" endorsement provides
Anderson with coverage under the CGL policy for the claims asserted.
Therefore, National has a duty to defend and to indemnify.

In the plain language of the policy definition, to be a "waste

facility" the site at issue must be one to which waste is delivered for

one of four reasons: (1) storage; (2) disposal; (3) processing; or (4)

treatment.  National does not contend that waste is delivered to the lift

station for storage.  The question, then, is whether the lift station is a

site to which waste is delivered for disposal, processing, or treatment.

In attempting to explain sewage lift stations, both parties rely on

the following description of a lift station from the U.S. Environmental

Protection Agency ("EPA"):

> Wastewater lift stations are facilities designed to move
> wastewater from lower to higher elevation through pipes.
> Key elements of lift stations include a wastewater receiving
> well (wet-well), often equipped with a screen or grinding to
> remove coarse materials; pumps and piping with associated
> valves; motors; a power supply system; an equipment
> control and alarm system; and an odor control system and
> ventilation system.

*Court Doc. 23-4 at 1.*

In considering the purpose and function of a lift station, the Court

finds the above description instructive.  From it, however, the Court

cannot conclude that waste is delivered to lift stations for disposal,

processing, or treatment.

The phrase "delivered for" used to modify "disposal, processing or

-16-

treatment" in the "waste facility" definition confirms that, for the site to be a waste facility, the delivery of the waste to the site must be for the purpose of "disposal, processing or treatment" of the waste.  None of the three words describes the purpose of a lift station as described by the EPA.

Rather, the EPA definition expressly states that lift stations are designed "to move wastewater from lower to higher elevation through pipes."  *Court Doc. 23-4 at 1.*  The remainder of the description simply lists some of the features lift stations are "often equipped with" to accomplish the "move[ment] of wastewater from lower to higher elevation through pipes."  As described, it appears that the essential purpose of the lift station was to assist in the sewage transportation system.

It is true, as National argues, that the list of equipment at a lift station "often" includes "a screen or grinding to remove coarse materials; . . . and an odor control system and ventilation system."  Those items of equipment, which may only potentially be part of a lift station, however, do not change the reason that lift stations exist – i.e.,

moving wastewater from lower to higher elevations – to a different purpose, such as "disposal, processing or treatment" of the waste.  To conclude otherwise would be to read into the EPA's description of the purpose of a lift station a purpose that is not stated.

In reaching its conclusion herein, the Court notes that it finds unpersuasive National's argument that the allegations in the underlying action bring the sewage lift station into the definition of "waste facility" in the CGL policy.  In making this argument, National points to two paragraphs in the underlying plaintiffs' complaint – paragraphs 34 and 58 – in which they refer to the lift station as a "disposal facility." *National's Consolidated Reply & Resp. Br. (Court Doc. 29) at 14-15 (citing National's Stmt. of Undisputed Facts (Court Doc. 23) at ¶ 12).*  The Court rejects this argument for two reasons.

First, the Court notes that National is correct in asserting that, under Montana law, an insurer has an independent duty to provide a defense based on the underlying action's allegations.  *See Travelers Casualty and Surety Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d at 478.  It is, however, "[t]he acts giving rise to the claim [that] form

-18-

the basis for coverage, not any legal theories contained in the underlying complaint." *Id*. Any allegation that the lift station is a "disposal facility" is not a factual allegation upon which liability in the underlying case is based. Thus, whether the underlying plaintiffs characterize the lift station as a disposal or waste facility is irrelevant to the liability determination in the underlying case.

Second, a close examination of the two paragraphs at issue reveals that National overstates the significance of their contents.

In paragraph 34 of their complaint, the underlying plaintiffs allege:

> Defendants' improper placement, construction and management of the *lift station and other disposal facilities* of the Defendant Willow Creek Sewer District have resulted in a direct, physical invasion of Plaintiffs' property that interferes with Plaintiffs' exclusive use, enjoyment and protection of their property and their right to a clean and healthful environment.

*Court Doc. 2-2 at ¶ 34* (emphasis added).

From a plain reading of this language, the underlying plaintiffs do not characterize the lift station as a "waste facility" or even as a "disposal facility." Rather, they list them separately indicating that

-19-

they are distinct from one another.  If they had intended otherwise,

there would be no reason for them to list "lift station" separately from

"other disposal facilities."  Also, the defendants in the underlying action

included, in addition to Anderson, the Willow Creek Sewer District.  It

is possible that the contentions were meant broadly to include improper

management of the sewer district's disposal facilities.

> With respect to paragraph 58, the underlying plaintiffs allege:

> Defendants and their agents knowingly concealed or misrepresented to Plaintiffs and the public that Defendants' *waste containment and disposal facilities* were not sources of contamination.

*Court Doc. 2-2 at ¶ 58* (emphasis added).

In this paragraph, the underlying plaintiffs do not refer to the lift

station at all.  And, their general reference to the defendants' waste

containment and disposal facilities cannot simply displace the above-

mentioned EPA description of a lift station so as to bring the lift station

within the endorsement's exclusion.

The Court also must consider the Montana Supreme Court's

holding that "exclusions and words of limitation in a policy must be

strictly construed against the insurer."  *Leibrand v. National Farmers*

*Union Prop. & Cas. Co.,* 898 P.2d 1220, 1223 (Mont. 1995).  To the extent that the term "waste facility" is ambiguous as applied to the sewage lift station, that ambiguity must be construed against National.

For these reasons, the Court concludes that the sewage lift station at issue here is not a "waste facility" as defined in the CGL policy. Thus, the "waste facility" exclusion to the "Limited Pollution Coverage – Work Sites" endorsement does not apply.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that National's motion for summary judgment *(Court Doc. 21)* be DENIED and that Anderson's cross-motion for summary judgment *(Court Doc. 26)* be GRANTED as set forth herein.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service

hereof, or objection is waived.

DATED this 4th day of February, 2011.


/S/ Carolyn S. Ostby
United States Magistrate Judge